Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| EDUARDO TARAFA FELICIANO Y OTROS<br><br>*Apelado*<br><br>v.<br><br>SANDRA I. MERCADO VÉLEZ H/N/C SM CAPITAL PROPERTIES Y OTROS<br><br>*Apelante* | KLAN202500283 | Apelación procedente del Tribunal de Primera Instancia, Sala Superior de Humacao<br><br>Caso Núm.: HU2023CV00602 (Salón 208)<br><br>Sobre: Acción Resolutoria y Otros |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de mayo de 2025.

Comparece ante nos, la señora Sandra I. Mercado Vélez (señora Mercado), SM Capitol Properties (SM Capitol) y George Andrew Massuco (señor Andrew) (en conjunto, apelantes), los cuales solicitan la revocación de la *Sentencia*[1] emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao, el 4 de febrero de 2025 y notificada el 5 de febrero de 2025 (TPI o foro apelado). Mediante el referido dictamen, el foro apelado declaró *Ha Lugar* la *Demanda*[2] presentada por el señor Eduardo Tarafa Feliciano (señor Tarafa o apelado) y *No Ha Lugar* a la reconvención presentada por los apelantes.

Por los fundamentos que expondremos a continuación, se **confirma** la *Sentencia* apelada.

**I.**

Los hechos del caso de autos se remontan al 3 de mayo de 2023, cuando el señor Tarafa instó una *Demanda* contra los

---

[1] Anejo 30 del recurso de *Apelación*, págs. 216-228.
[2] Anejo 1 del recurso de *Apelación*, págs. 1-5.

apelantes, por alegadamente estos incumplir el *Contrato de Opción de Compraventa* que suscribieron el 21 de enero de 2022[3]. Posteriormente, el 11 de mayo de 2023, el apelado presentó Primera Demanda Enmendada[4].

Por su parte, el 30 de junio de 2023, los apelantes sometieron su *Contestación a Demanda, Reconvención y Solicitud de Desestimación Sumaria*[5]. En esta, negaron las alegaciones de la *Demanda*, adujeron que la señora Mercado no fue parte de los acuerdos suscritos entre las partes y que solo participó como corredora de bienes raíces del señor Andrew.

Transcurrido algún tiempo, el 7 de febrero de 2024, el señor Tarafa presentó una *Moción Solicitando Sentencia Sumaria*[6]. En respuesta, al día siguiente, los apelantes expusieron su oposición a la solicitud de sentencia sumaria[7].

En el ínterin, el 10 de febrero de 2024, las partes presentaron el *Informe Preliminar Sobre Conferencia Con Antelación al Juicio*[8]. Tres días más tarde, se celebró la conferencia con antelación al juicio en la cual se señaló juicio en su fondo para el 20 y 21 de mayo de 2024[9].

Así las cosas, el 12 de febrero de 2024, el TPI emitió una *Orden*[10] en la cual declaró *No Ha Lugar* la solicitud de sentencia sumaria presentada por el apelado. Inconforme con el dictamen, el 29 de febrero de 2024, el señor Tarafa solicitó reconsideración[11], sin embargo, la misma fue denegada mediante Orden[12] emitida y notificada el 1 de marzo de 2024.

---

[3] Anejo 1 del recurso de *Apelación*, págs. 6-7.
[4] Anejo 2 del recurso de *Apelación*, págs. 15-19.
[5] Anejo 3 del recurso de *Apelación*, págs. 26-40.
[6] Anejo 10 del recurso de *Apelación*, págs. 58-75.
[7] Anejo 13 del recurso de *Apelación*, págs. 145-150.
[8] Anejo 13 del recurso de *Apelación*, págs. 120-137.
[9] Anejo 14 del recurso de *Apelación*, pág. 151.
[10] Anejo 15 del recurso de *Apelación*, pág. 152.
[11] Anejo 16 del recurso de *Apelación*, págs. 153-157.
[12] Anejo 17 del recurso de *Apelación*, pág. 158.

Algún tiempo después, el 20 y 21 de mayo de 2024, se celebró el juicio en su fondo y las partes presentaron prueba testifical y documental[13]. Sometidos los memorandos de derecho de las partes[14], el 4 de febrero de 2025[15], el foro apelado emitió *Sentencia* y realizó las siguientes Determinaciones de Hechos:

1. El 21 de enero de 2022, el codemandado George Andrew Massuco representado por poder militar otorgado a Simelly Guash Rivera y los esposos Tarafa-Lasanta, suscribieron un Contrato de Opción de Compraventa. (Véase Exhibit 4).

2. El contrato antes mencionado, fue preparado y redactado en su totalidad por la corredora de bienes raíces, Sandra I. Mercado Vélez, licencia 17899, haciendo negocios como SM Capital Properties. Véase Exhibit 1 de la parte demandante.

3. La codemandada Sandra I. Mercado Vélez admitió en su testimonio que ella fue la que preparó y redactó en su totalidad el contrato de opción de compraventa.

4. Que el contrato establecía la opción de compra de un inmueble, cuyo precio de venta ascendía a $410,000.

5. Que la cantidad pagada por el derecho de opción se fijó en $12,300. Dicha opción estaría vigente durante (30) días. (Véase Exhibit 1 y Exhibit 5).

6. Que los (30) días antes referidos vencieron el 20 de febrero de 2022.

7. Que conforme al Exhibit 11 y a la admisión bajo juramento de la Sra. Simelly Guash Rivera, el vendedor, prorrogó por (10) días adicionales la vigencia del Contrato de Opción de Compraventa. Dicha prórroga vencía el 2 de marzo de 2022.

8. Que los $12,300 dólares por concepto de opción antes mencionados, fueron pagados por los demandantes, mediante Cheque Número 103116300013620, expedido por el Banco Popular a la orden de Sandra Mercado Vélez. (Véase Exhibit 5 de la parte demandante).

9. Que entre los acuerdos trazados en el contrato de opción, figuraban las siguientes cláusulas:
"[...] EL VENDEDOR traspasará al COMPRADOR la propiedad arriba libre de gravamen excepto los aquí mencionados: Ninguno." (Véase Exhibit 4, página 1 de la parte demandante). El VENDEDOR traspasará al COMPRADOR un título legal de pleno dominio de propiedad, válido, negociable, libre de gravámenes. De igual forma la propiedad se venderá sin deudas de cuotas de mantenimiento, contribuciones o algún otro impuesto hasta el día del cierre. [...] (Véase Exhibit 4 de la parte demandante).

10. Que del Exhibit 3, Certificación Registral, surge claramente que el titular registral no es el codemandado

---

[13] Anejo 26 del recurso de *Apelación*, págs. 188-191 y Anejo 27 del recurso de *Apelación*, págs. 192-194.
[14] Anejo 28 del recurso de *Apelación*, págs. 195-209 y Anejo 29 del recurso de *Apelación*, págs. 210-215.
[15] Notificada el 5 de febrero de 2025.

George A. Massuco. El titular registral lo es: Palmas Lakes Inc.

11. Que surge del mismo Exhibit 3 la cantidad de Asientos pendientes de Inscripción para la propiedad en controversia.

12. El testimonio del Sr. Sellés Guzmán, le mereció entera credibilidad a este Tribunal, en el sentido de que los esposos Tarafa-Lasanta antes de firmar el Contrato de Opción de Compra, solicitaron que se produjera un Estudio de Título. Lo anterior fue confirmado, extensamente, por las cartas y comunicaciones electrónicas intercambiadas entre las partes de epígrafe. (Véase Exhibits 6,7,8,9).

13. Que el 8 de febrero de 2022, el Sr. Víctor Sellés Guzmán, le envió a los demandantes varios documentos, entre ellos, un Estudio de Título del inmueble a ser adquirido. (Véase Exhibit 3).

14. Que del testimonio, bajo juramento de la Sra. Sonia Lasanta, surge que conforme al Estudio de Título antes mencionado, la parte vendedora no era el titular del inmueble objeto de la transacción y que del Registro de la Propiedad surgían aproximadamente 10 asientos pendientes de inscripción. (Véase Exhibit 3).

15. Así las cosas, la parte demandante solicitó una póliza de título a la compañía Popular Insurance, la cual fue denegada, ya que dicha empresa "no estaba asegurando a Harbour Lakes", proyecto donde ubica el apartamento objeto de venta. (Véase Exhibit 6).

16. Ante la denegatoria de Popular Insurance, la parte demandante hizo la gestión con la compañía Capital Title por sugerencia de la Lcda. Maribel C. Picorrelli Vélez, Notario a cargo de otorgar la Escritura de Compraventa en esta transacción.

17. Por otro lado, el 18 de febrero de 2022, previo al vencimiento del plazo original del Contrato de Opción de Compraventa, la parte demandante solicitó a los demandados que se extendiera por un término, no menor a (20) días, el plazo para el otorgamiento de la Escritura de Compraventa. (Véase Exhibit 6).

18. Que el 20 de febrero de 2022, ante la situación registral antes expuesta, la parte demandante reiteró su solicitud de prórroga. Dicha prórroga tenía el propósito de que los demandantes pudieran conseguir una compañía dedicada a extender HU2023CV00602 05/02/2025 11:08:45 a.m. Página 4 de 13 5 pólizas de Seguro de Título, que les asegurara la inversión que se proponían realizar. (Véase Exhibit 7).

19. Que el 24 de febrero de 2022, los demandantes le comunicaron a los demandados que tanto Popular Insurance, como Title Group y Seguros Javier Calderón, declinaron emitir una póliza de seguro de título. (Véase Exhibit VIII).

20. Que los demandantes proceden a comunicarle a los demandados que debido a la situación registral antes expuesta y a falta de una compañía que asegurara la compraventa con una póliza de seguro de título, solicitaban la devolución de los $12,300 dólares que se depositaron por concepto de la opción. (Véase Exhibit 8).

21. Que el 28 de febrero de 2022, los demandantes reiteraron su solicitud sobre la devolución de los $12,300 que se depositaron por concepto de la opción. (Véase Exhibit 9).

22. Surge del testimonio de los demandantes que todos los requerimientos de los demandantes sobre la devolución de los $12,300 dólares que se depositaron por concepto de la opción infructuosos.

23. Debido a que la parte demandada, ignoró los requerimientos de la parte demandante a los fines de la devolución del dinero pagado por concepto de opción, obligó a la parte demandante a comparecer y a reclamar sus derechos ante este Tribunal[16].

Conforme a lo anterior, el TPI declaró *Ha Lugar* la *Demanda* presentada por el señor Tarafa. Asimismo, declaró *No Ha Lugar* la reconvención presentada por los apelantes y les ordenó a pagar la cantidad doce mil trecientos dólares (12,300.00) correspondiente al *Contrato de Opción de Compraventa* y cinco mil dólares ($5,000.00) por temeridad. Igualmente, estableció que la cantidad de intereses a devengar sería de ocho punto setenta y cinco por ciento (8.75%) desde la fecha de la *Sentencia* hasta que se pagara la misma.

Descontentos, el 10 de febrero de 2025, los apelantes solicitaron la reconsideración del referido dictamen[17]. Por su parte, el 25 de febrero de 2025, el señor Tarafa se opuso a la misma. Evaluadas las posiciones de las partes, el 4 de marzo de 2025[18], el TPI emitió una *Orden*[19] en la cual declaró *No Ha Lugar* la reconsideración presentada por los apelantes.

Insatisfechos aun, los apelantes acuden ante nos y le imputan al foro apelado los siguientes señalamientos de error:

ERRÓ Y ABUSO DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL INCURRIR EN ERROR MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA AL EMITIR LAS DETERMINACIONES #2, #3, #7, #12 Y #14 DE HECHOS EN CUANTO AL CONTRATO EN CONTROVERSIA SE CONTRADICE POR LOS TESTIMONIOS DE TESTIGOS DE LA PROPIA PARTE DEMANDANTE Y DE LA PATE DEMANDADA Y LOS DOCUMENTOS EN RÉCORD LO CUAL DESEMBOCÓ EN LA INTERPRETACIÓN ERRADA DEL DERECHO APLICABLE A LA CONTROVERSIA DE AUTOS

---

[16] Anejo 30 del recurso de *Apelación*, págs. 218-220.
[17] Anejo 31 del recurso de *Apelación*, págs. 229-251.
[18] Notificada el 5 de marzo de 2025.
[19] Anejo 33 del recurso de *Apelación*, pág. 261.

INTERPRETÁNDOSE EL CONTRATO DE FORMA DESFAVORABLE A LAS PARTES CODEMANDADAS.

ERRÓ Y ABUSÓ DE SU DISCRECIÓN EL TRIBUNAL DE PRIMERA INSTANCIA AL INCURRIR EN ERROR MANIFIESTO EN LA APRECIACIÓN DE LA PRUEBA AL RESPONSABILIZAR A LA CO-DEMANDADA SANDRA I MERCADO VÉLEZ CUANDO SURGE DE LA PRUEBA TESTIFICAL DESFILADA QUE NO FUE OTORGANTE NI FIRMÓ EL CONTRATO DE OPCIÓN DE COMPRAVENTA, EL PROPIO CONTRATO EN CONTROVERSIA EXPRESAMENTE LE LIBERA DE CUALQUIER INFORMACIÓN NO DIVULGADA POR LOS COMPRADORES O VENDEDORES Y NO FUE SU DETERMINACIÓN RETENER EL DEPÓSITO EN CONTROVERSIA SEGÚN ESTABLECIÓ LA PRUEBA TESTIFICAL PRESENTADA.

Examinado el recurso ante nuestra consideración, procedemos a emitir nuestro dictamen sin necesidad de la comparecencia de la parte apelada, según faculta la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones[20]. Esto, con el fin de lograr el más justo y eficiente despacho de la presente causa de acción.

**II.**

En lo pertinente a la controversia que nos ocupa, la Regla 19 del Reglamento del Tribunal de Apelaciones[21], establece todo lo relacionado a la reproducción de la prueba oral en casos civiles. La Regla 19 del Reglamento del Tribunal de Apelaciones, en su inciso (A), dispone que "[c]uando la parte apelante haya señalado algún error relacionado con la suficiencia de la prueba testifical o con la apreciación errónea de ésta por parte del tribunal apelado, someterá una transcripción, una exposición estipulada o una exposición narrativa de la prueba"[22].

Por otra parte, en lo relacionado a la transcripción de la prueba oral en los recursos de apelación y de certiorari ante el foro apelativo intermedio, la Regla 76 (A) del Reglamento del Tribunal de Apelaciones[23], dispone, en lo pertinente, que:

> [u]na parte en una apelación o en un recurso de *certiorari* ante el Tribunal de Apelaciones notificará al Tribunal de Apelaciones no más tarde de diez días desde que se presentó

---

[20] 4 LPRA Ap. XXII-B, R.7 (B)(5).
[21] 4 LPRA Ap. XXII-B, R. 19.
[22] 4 LPRA Ap. XXII-B, R. 19. (A).
[23] 4 LPRA Ap. XXII-B, R. 76 (A).

el escrito de apelación o se notificó la expedición del auto solicitado que se propone transcribir la prueba oral. En esa moción, la parte proponente expresará las razones por las cuales considera que la transcripción es indispensable y que propicia mayor celeridad en los procesos que la presentación de una exposición estipulada o una exposición narrativa. En todo caso, la parte proponente identificará en la moción las porciones pertinentes del récord ante el Tribunal de Primera Instancia cuya transcripción interesa, incluyendo la fecha del testimonio y los nombres de los testigos.

Por último, en su inciso (B), la referida disposición legal establece que:

[a]utorizada la transcripción, su proponente podrá solicitar al Tribunal de Primera Instancia la regrabación de los procedimientos. La moción a esos efectos será presentada dentro de los diez (10) días siguientes a la notificación de la orden del Tribunal de Apelaciones[24].
[...]

Sobre lo anterior, en *Pueblo v. Valentín Rivera,* 197 DPR 636, 640-641 (2017), nuestro Tribunal Supremo manifestó que:

[...] de la normativa expuesta se desprende que la parte que recurre ante el Tribunal de Apelaciones y señala errores en cuanto a la apreciación de la prueba debe: (1) someter transcripción, una exposición estipulada o una exposición narrativa de la prueba oral presentada ante el Tribunal de Primera Instancia, y (2) dentro de los diez días siguientes a la presentación del recurso, presentar una moción en la que explique cuál es el mecanismo de reproducción de la prueba que ha de utilizar y los motivos por los cuales éste es el más apropiado. Además, a tenor con la Regla 76(A) del Reglamento del Tribunal de Apelaciones, *supra,* se requiere que, dentro de esos mismos diez días, la parte apelante indique cuáles son las porciones pertinentes del récord que interesa reproducir, incluso la fecha de los testimonios y los nombres de los testigos. Es así, y solo así, que el recurso queda perfeccionado de forma tal que el foro apelativo intermedio- en este tipo de caso- quede en posición de adjudicar en los méritos las controversias planteadas ante sí.

**III.**

En el presente caso, los apelantes pretenden que intervengamos con la credibilidad y el valor que le mereció al juzgador de los hechos la prueba presentada durante el juicio en su fondo. Los apelantes, en esencia, señalaron dos errores relacionados a la apreciación de la prueba por parte del foro sentenciador. En específico, arguyeron que, el TPI erró en la apreciación de la prueba y abusó de su discreción toda vez que, a pesar de contar con

---

[24] 4 LPRA Ap. XXII-B, R. 76 (B).

evidencia testifical y documental, el foro apelado realizó determinaciones de hechos que contradecían los testimonios vertidos en el juicio en su fondo.

Es menester puntualizar que, en el caso de autos, los apelantes no colocaron a este foro intermedio en posición de poder atender la controversia ante su consideración y, por ende, poder determinar si en efecto se cometieron los errores señalados. Ello nos impide evaluar si el TPI erró en la apreciación de la prueba, particularmente, sobre la credibilidad que le mereció al juzgador de hechos a la prueba presentada por los apelantes.

Como es conocido, en nuestro ordenamiento jurídico, y particularmente en este tipo de casos, le otorgamos un alto grado de deferencia al foro sentenciador. Esto, debido a que, estuvo en mejor posición para aquilatar la evidencia testifical presentada, pues tuvo la oportunidad de oír y ver de forma directa la prueba[25]. Es por eso que, de ordinario, cuando se señalan errores relacionados a la apreciación de la prueba, como en el caso de marras, se exige que el recurso sea perfeccionado mediante alguno de los mecanismos de recopilación de la prueba oral presentada ante el TPI[26]. Lo anterior no sucedió en el presente caso y no era un requisito reglamentario que este foro apelativo se lo recordara al apelante. El Reglamento del Tribunal de Apelaciones es, en extremo, claro sobre ese particular.

Como adelantamos, la argumentación de los apelantes se elaboró sobre una evidencia que no ha sido reproducida debidamente ante este foro. Ello, a pesar de que se pretende cuestionar la apreciación de la prueba realizada por el Juez de Instancia. Precisamente, porque la *Apelación* guarda relación con la apreciación de la prueba, les correspondía a los apelantes ponernos en condiciones de evaluar sus señalamientos de error. El Tribunal

---

[25] Véase, *Pueblo v. García Colón I*, 182 DPR 129 (2011).
[26] *Hernández v. San Lorenzo Const.*, 153 DPR 405, 411–422 (2001).

de Apelaciones no puede pasar juicio sobre la apreciación de la prueba del TPI si la prueba oral no fue debidamente reproducida. Si bien es cierto que se nos proveyó la regrabación, la misma no fue estipulada ni autenticada por las partes.

La imposibilidad de evaluar y revisar la prueba y los testimonios presentados en el juicio en su fondo, no nos permite intervenir con la adjudicación de credibilidad del tribunal sentenciador que vio y escuchó la prueba de primera mano. Ante ese escenario, estamos obligados a respetar la norma de la deferencia que cobija las decisiones del TPI.

**IV.**

Por los fundamentos que anteceden, los que hacemos formar parte de este dictamen, ***confirmamos*** la *Sentencia* apelada emitida por el Tribunal de Primera Instancia, Sala Superior de Humacao.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El juez Adames Soto concurre y hace constar lo siguiente: La parte apelante incluyó la grabación del juicio, conteniendo la prueba testifical, poniéndonos en posición de examinar los señalamientos de error correspondientes a la apreciación de dicha prueba. Además, en la argumentación de los errores señalados, esa parte hizo alusión a los minutos en la grabación que contenían los testimonios que juzgó haber sido erróneamente aquilatados por el foro apelado. Hubiese confirmado la Sentencia apelada en sus méritos, por cuanto no fui persuadido por la parte apelante de que el tribunal *a quo* incidiera en el curso decisorio elegido.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones